44 C.C.P.A.(Patents)

**Matter of the Application of BOOK-BINDER'S RESTAURANT, Inc.**

**Patent Appeals No. 6222.**

United States Court of Customs and Patent Appeals.

Jan. 9, 1957.

Leonard L. Kalish, Philadelphia, Pa. (Albert H. Kirchner, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Commissioner of Patents, 103 U.S.P.Q. 274, affirming the action of the Examiner of Trademarks in refusing registration to the appellant of "Old Original Bookbinders" as a service mark on the Principal Register for services described as "restaurant, catering and banquet services." The record indicates that appellant operates a single restaurant in Philadelphia, Pennsylvania, and that the services relied on are rendered in that city.

Registration was refused solely on the ground that the services in question are not "rendered in commerce," as required by sections 3 and 45 of the Trademark Act of 1946, 15 U.S.C.A. § 1051 et seq. As defined in section 45 "commerce" means "all commerce which may lawfully be regulated by Congress." The issue to be determined here, therefore, is whether the rendering of restaurant, catering and banquet services entirely within one state, involves "commerce which may lawfully be regulated by Congress" within the meaning of the Act.

The interstate commerce clause of the Constitution has proved to be one of the most difficult to interpret, and the decisions construing it have not been uniform. A recent case in point is Fairway Foods, Inc., v. Fairway Markets, Inc., 9 Cir., 227 F.2d 193, 197, involving the application of the provisions of the Trademark Act of 1946 to a single retail grocery business. In its decision the Ninth Circuit Court of Appeals said:

"While it is true that activities which in isolation might be deemed local, may affect commerce due to interlacings of business across state lines, in absence of a showing that the business is part of a coordinated interstate system substantially affecting commerce, the activities of retail grocers purchasing and selling their wares exclusively intrastate are not a permissible field for Congressional regulation under the Commerce power."

Appellant argues that its services affect interstate commerce because its restaurant is located near the Pennsylvania-New Jersey boundary and people travel back and forth between those states, as well as between Delaware and Pennsylvania, for the purpose of obtaining such services.

The question as to what intrastate commerce affects interstate commerce in such a way as to justify Congress in regulating it was fully considered by the Supreme Court in the case of Schechter Poultry Corp. v. United

States, 295 U.S. 495, 25 S.Ct. 837, 850, 79 L.Ed. 1570, in which it was held that the slaughtering, in one state, of poultry imported from another was not commerce which could lawfully be regulated by Congress. In that decision the court said:

"In determining how far the federal government may go in controlling intrastate transactions upon the ground that they 'affect' interstate commerce, there is a necessary and well-established distinction between direct and indirect effects. The precise line can be drawn only as individual cases arise, but the distinction is clear in principle. * * * But where the effect of intrastate transactions upon interstate commerce is merely indirect, such transactions remain within the domain of state power. If the commerce clause were construed to reach all enterprises and transactions which could be said to have an indirect effect upon interstate commerce, the federal authority would embrace practically all the activities of the people, and the authority of the state over its domestic concerns would exist only by sufferance of the federal government."

Similarly in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 624, 81 L.Ed. 893, the same court said:

" * * * Undoubtedly the scope of this power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government. The question is necessarily one of degree."

It has been held that services which are essential to the production of goods which are transported in interstate commerce may be regulated by Congress under the interstate commerce clause, even though they are performed entirely within one state, and in Martino v. Michigan Window Cleaning Co., 327 U. S. 173, 66 S.Ct. 379, 90 L.Ed. 603, cited by appellant, that same principle was applied to the washing of windows in a building used primarily in the production of such goods. On the other hand, in 10 East 40th St. Bldg., Inc., v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, it was held that maintenance services in a building containing a substantial number of offices devoted to interstate commerce, but more than half of the space being devoted to other uses, were not subject to such regulation.

■ It is clear from the foregoing cases that the authority of Congress, under the interstate commerce clause, to regulate intrastate commerce is limited to such intrastate commerce as has a *direct* effect upon interstate commerce. Generally speaking, only intrastate commerce which is necessary to the production or movement of goods in interstate commerce, or which serves materially to hamper or impede such commerce has been held to be subject to such regulation.

Appellant on the other hand relies on Bowles v. 870 Seventh Avenue Corp., 2 Cir., 150 F.2d 819, as showing that the restaurant business may lawfully be regulated by Congress. That case, however, involved emergency legislation enacted during World War II and was not based on the power of Congress to regulate interstate commerce. In the Fairway case, supra, it may be noted the court stated that since the decision in the Trade-Mark Cases, Kansas Pac. R. Co. v. Twombly, 1879, 100 U.S. 78, 82, 25 L. Ed. 550, "it has been established that Congress gains its power over trademarks under the Commerce clause of the Constitution."

Appellant also argues that the registration and enforcement provisions of the 1946 Trademark Act must be tested by the same criteria, and cites Pagliero v. Wallace China Co., 198 F.2d 339, 341 and Stauffer v. Exley, 184 F.2d 962,

both decided by the Circuit Court of Appeals for the Ninth Circuit, as showing that such enforcement may extend to intrastate commerce. It is clear, however, that the doctrine of those decisions is limited to intrastate commerce in which, in the words of the Pagliero decision, "there is present the requisite effect on interstate commerce." We are of the opinion that such an effect has not been shown in the instant case.

Another case relied on by appellant as being squarely in point here is Ex parte Los Angeles Union Stock Yards Co., 101 U.S.P.Q. 341. That case involves a decision which is not controlling here, and which moreover is clearly distinguishable in that it involved stockyard services comprising handling, feeding, watering, loading, quartering and weighing livestock. Those services had been regulated by the Packers and Stockyards Act of 1921, Title 7 U.S.C.A. § 181 et seq., enacted by Congress in 1921 under the authority of the interstate commerce clause of the Constitution. That Act was held constitutional by the Supreme Court in Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 402, 66 L.Ed. 735, wherein the court said:

> " * * * The stockyards are but a throat through which the current flows, and the transactions which occur therein are only incident to this current from the West to the East, and from one state to another. Such transactions can not be separated from the movement to which they contribute and necessarily take on its character. * * * "

It is evident that appellant's services do not in a legal sense contribute to interstate commerce in any such manner as those described in the above quotation.

The record is not wholly clear as to the exact manner in which appellant renders its services. There are no affidavits or testimony of record and the application states merely that the mark is used "for restaurant, catering and banquet services." In response to an inquiry by the examiner as to how such services were rendered in interstate commerce, appellant's attorney made an unverified statement that the services were offered to customers and prospective customers in states adjoining Pennsylvania "thereby inviting or inducing persons in other states to travel from such other states into Pennsylvania to obtain from applicant the aforesaid services at applicant's place of business. Services are also rendered by selling and supplying cooked or prepared foods for transportation into and consumption in adjoining states such as New Jersey and Delaware, and such foods are so transported into such other states for the purposes stated." Statements similar to the last one quoted appear in appellant's brief before this court.

The arguments and authorities submitted by the appellant have been carefully considered but, for the reasons above stated, we are of the opinion that it has failed to establish that the services for which registration is sought are rendered in commerce which may lawfully be regulated by Congress within the meaning of the Trademark Act of 1946.

For the reasons stated, the decision appealed from is affirmed.

Affirmed.

JACKSON, J., Retired, recalled to participate in place of COLE, J.