51 CCPA

## Application of GASTOWN, INC.
### Patent Appeal No. 7024.

United States Court of Customs and Patent Appeals.
Jan. 23, 1964.

Almond, J., and Worley, C. J., dissented.

---

Pearne & Gordon, Albert L. Ely, Jr., Cleveland, Ohio, for appellant.

Clarence W. Moore, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, 133 USPQ 630, sustaining the refusal of the examiner to register "GASTOWN" as a service mark for "automobile and truck supply maintenance services."

Appellant asserts that the mark is used by applying it to stationary pumps, globes, signs, and like displays associated with its services. Use since January 13, 1949, is alleged.

The examiner's refusal of registration was based on the grounds that (a) the claimed services are not rendered in interstate commerce, and (b) "automobile and truck supply services" are not "services" within the meaning of the Trademark statute. The board affirmed only on the ground that the services are not rendered "in commerce" within the contemplation of Section 45 of the Trademark Act of 1946, and reversed the examiner as to ground (b).

The applicable provisions of Section 45 of the Trademark Act of 1946 read:

"Commerce. *The word 'commerce' means all commerce which may lawfully be regulated by Congress.*

\*    \*    \*    \*    \*    \*

"Use in commerce. For the purposes of this Act a mark shall be deemed to be used in commerce \* \* on services when it is used or displayed in the sale or advertising of services and the services are *rendered in commerce.*" [Emphasis ours.]

It appears from the record that appellant operates a chain of automobile and truck service stations, all within the State of Ohio, some of which are located on federal highways, and that appellant's services, although rendered only in the State of Ohio, embrace services to customers who are engaging in interstate commerce. The board found that appellant used its mark in the sale and advertising of automobile and truck maintenance services and that such services involved, in part, the delivery of gasoline and other automotive products to trucks or other vehicles stalled on highways. The board also apparently accepted the assertion of appellant that a large segment of activities in connection with its services is "subject to regulation by Congress under such acts as the Federal Wage and Hour Act, the Child Labor Law, the Dealer Act, etc., and through such agencies as The Federal Trade Commission." Invoices on record show that customers domiciled in other states are billed for "Gasolines—Oils—Lubricants." Appellant also introduced into the record a specimen GASTOWN cash bonus stamp book offered to induce retail customers to patronize GASTOWN SERVICE STATIONS regularly for GASTOWN products and services featured on the inside cover of the attached book. The stamp book showed regular

sale of GASTOWN products and services to a retail customer not residing in the State of Ohio, the stamp book being redeemed from a West Virginia resident. Ray Carmosino, President of Gastown, Inc., testified that one service definitely evidenced by the stamp book "that is consistently rendered by all Gastown Service Station attendants is the cleaning, not only of windshields, but all other windows and the headlights of a customer's car."

It is pertinent to here note that the provisions of the Trademark Act of 1946, hereinabove quoted, relating to the definition of "use in commerce" was amended by Public Law 87–772, approved October 9, 1962, so that the definition now reads, insofar as here material, that the mark shall be deemed to be "used in commerce":

> " * * * on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in this and a foreign country and the person rendering the services is engaged in commerce in connection therewith." [1]

■ The record clearly supports the findings of the board that the services rendered or performed by the appellant are confined to the State of Ohio. It is also apparent from the record that some of appellant's customers have their legal situs in other states; are themselves engaged in interstate commerce when served by appellant in Ohio; are extended credit and billed for services in their respective domiciliary states.

■ The narrow and precise issue is simply this: Where an operator of service stations provides automotive service

and maintenance for customers who are traveling interstate on federal highways in the course of engaging in interstate commerce, is the operator rendering services "in commerce" within the meaning of Section 45 of the Lanham Act? We believe that this question must be answered in the affirmative. Part of the service rendered by the appellant at its service stations includes delivering gasoline and other automobile products to trucks or other vehicles stalled on highways. Obviously the automobiles and trucks could not travel at all without the gasoline. Such services directly affect interstate commerce. Therefore, since appellant's mark is clearly "used * * in the sale * * * of services and the services are rendered in commerce", the stated ground for refusing to register it must be reversed.

In Pure Oil Co. v. Puritan Oil Co., 127 F.2d 6 (2d Cir. 1942), a defendant charged with trademark infringement operated a single filling station in Connecticut, from which it sold motor fuel and oils largely to residents of Connecticut, but it appeared that some part of the gasoline allegedly sold under an infringing mark crossed the state line. The court held in that case that assertion of federal jurisdiction under the Trade-Mark Act of 1905 on the ground that alleged infringing use was in "interstate commerce" was not so plainly unsubstantial as to require dismissal of the complaint for lack of jurisdiction. In the course of the opinion reversing the District Court, Judge Learned Hand stated:

> " * * * Cars come to the 'service station' from outside Connecticut to be filled; they carry away what they get and certainly some part of it crosses the border in their tanks. It is true that this is a small part of the defendant's total sales—ap-

1. The Senate Report No. 2107, U.S.Code Congressional and Administrative News 1962, p. 2845, that accompanies Public Law 87–772 states that the Public Law 87–772 "is in large part a housekeeping measure, making minimal substantive changes in the trademark law." Regarding the amendment to the *Use in com-*

*merce* provision, i. e. the 15th paragraph of section 45 of the Trademark Act of 1946, the Senate Report states: "The amendments to the 15th paragraph *amplify* the definition of use in commerce with respect to service marks." (Emphasis ours.)

parently only about five per cent—but the amount does not matter if pro 'tanto the business violates the act. Omitting irrelevant words, the section reads as follows: 'Any person who shall * * * imitate any * * * trademark and affix the same to merchandise * * * or to labels, signs, prints, packages, wrappers or receptacles intended to be used * * * in connection with the sale of merchandise * * * and shall use * * * such * * * imitation in commerce among the several States.' The defendant does affix an 'imitation' of the mark to 'receptacles intended to be used * * in connection with the sale' of gasoline in interstate commerce, and it does not strain the sense to say that in so attracting customers it 'uses' the 'imitation' in that commerce. Faced with the strict necessity of deciding, we should perhaps not say that that was the kind of 'use' intended; rather it would seem from the context that the 'receptacles' or 'signs' which bear the mark must themselves move in interstate commerce. If they need not, the section would cover any use of a registered trade-mark which facilitated an interstate sale; a doubtful interpretation at best, which arguendo we reject. Nevertheless, it does not appear to us so untenable an interpretation as to make an assertion of jurisdiction based upon it 'plainly unsubstantial.' On the contrary, *we think it a not implausible theory that so to use a mark is to 'use' it 'in commerce.'* There can be no doubt that Congress might have so declared had it been minded; the Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550, do not stand in the way. The decision of a majority of this court in Treasure Imports, Inc., v. [Henry] Amdur [2 Cir.], 127 F.2d 3, does not conflict with our conclusion. The jurisdiction of the court under the Trade-Mark Act had only sales

made before registration to support it." [Emphasis ours.]

See also Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603; Steele et al. v. Bulova Watch Co., Inc., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252; Pure Food, Inc. v. Minute Maid Corporation, 214 F.2d 792 (5th Cir. 1952).

Appellee has cited In re Bookbinder's Restaurant, Inc., 240 F.2d 365, 44 CCPA 731, as controlling authority applicable to the factual situation here. The issue in Bookbinder's was whether appellant's services were "rendered in commerce" as required by sections 3 and 45 of the Trademark Act of 1946.

This court affirmed the Commissioner's refusal of registration on the ground that the services in question were not "rendered in commerce," holding that appellant's services did not involve commerce which may lawfully be regulated by Congress within the meaning of the 1946 act since said services did not have a *direct* effect upon interstate commerce.

We think the factual situation here is distinguishable from the factual situation in Bookbinder's, for as the court stated, "The record indicates that appellant operates *a single restaurant in Philadelphia, Pennsylvania,* and that *the services relied on are rendered in that city*" [emphasis ours], and "There are no affidavits or testimony of record and the application states merely that the mark is used 'for restaurant, catering and banquet services.' " The court referred to the fact that in response to an inquiry by the examiner as to how appellant's services were rendered in interstate commerce, appellant's attorney made an *unverified statement* "that the services were offered to customers and prospective customers in states adjoining Pennsylvania 'thereby inviting or inducing persons in other states to travel from such other states into Pennsylvania to obtain from applicant the aforesaid services at applicant's place of business. Services are also rendered by selling and supplying cooked or prepared foods for

transportation into and consumption in adjoining states such as New Jersey and Delaware, and such foods are so transported into such other states for the purposes stated,' " and observed that statements similar to the last one quoted appeared in appellant's brief. No weight, however, was given to those unverified statements by the court in deciding Bookbinder's.

On the other hand, the present record shows that appellant operates a chain of automobile and truck service stations, some of which are located on federal highways. Some of appellant's customers have their legal situs in other states, are engaged in interstate commerce when served by appellant in Ohio, and are extended credit and billed in their respective domiciliary states. We think those circumstances clearly establish that appellant's services have a direct effect on interstate commerce.

As stated in the opinion of the Court of Appeals, Fifth Circuit, in Bulova Watch Co., Inc. v. Steele et al., 194 F.2d 567, aff'd., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952) "It would seem that in the Lanham Trade Mark Act of 1946, the Congress intended to regulate interstate and foreign commerce to the full extent of its constitutional powers." With this admonition in mind, we conclude that the activities of appellant were such that its mark is used in commerce within the meaning of section 45 of the Lanham Act. For these reasons we *reverse* the decision of the board.

Reversed

ALMOND, Judge, dissenting, with whom WORLEY, Chief Judge, joins.

I entertain views relative to the resolution of the issue here which I cannot harmonize with the views expressed by the majority.

The majority finds and states categorically that:

"The record clearly supports the findings of the board that the services rendered or performed by the appellant are *confined* to the State of Ohio." (Emphasis supplied.)

The indisputable facts are, bluntly stated, that the services have their origin and finality—their Alpha and Omega—solely and exclusively, within the territorial limits of a single state. This completely negates the possibility of a conclusion that the services "are rendered in commerce" within the purview of Section 45 of the Trademark Act of 1946. The collateral facts that "some of appellant's customers have their legal situs in other states; are themselves engaged in interstate commerce when served by appellant in Ohio; are extended credit and billed for services in their respective domiciliary states," have no qualifying impact on the salient fact that the services are completely performed and rendered in the State of Ohio. These collateral facts are totally irrelevant to a proper resolution of the issue here.

The majority wrestles with futility in an attempt to distinguish the factual situation here from that which confronted this court in In re Bookbinder's Restaurant, Inc., 240 F.2d 365, 44 CCPA 731.

In my judgment Bookbinder's, supra, is clearly apposite and is binding on this court unless and until it is judicially qualified or repudiated. A long line of Patent Office decisions has been predicated on it. If the majority considers Bookbinder's, supra, wrongly decided or no longer efficacious, it should be forthrightly set at naught and not emasculated through the abortive process of distinguishing it from a factual situation to which it is clearly apposite. Judicial abandonment of the stability of a precedent afforded by the salutary principles of stare decisis should not be accomplished by indirection.

The majority opinion placed emphasis on the fact of a single restaurant in Bookbinder's while we have a plurality of gas service stations here. I fail to see where the scope of service rendered in a single state bears any relevancy to the issue. The services, in toto, in both instances were confined to a single state.

The majority depreciates the relevancy of Bookbinder's by emphasizing that

there were no affidavits or testimony of record relating to the extension of services beyond the borders of the situs state.

Courts are neither expected nor required to administer the judicial process in a vacuum by closing their eyes to that which is inescapably obvious and recognized as fact by common consent. To require a sworn affidavit that people cross the river to come to Philadelphia from New Jersey would seem to me to border on the ridiculous. The court could not escape judicial notice of the proximity of Philadelphia to New Jersey and Delaware; the flow of traffic therebetween; that people eat and seek out well known and highly advertised restaurants which cater to that purpose. Such services as those provided in Bookbinder's, as well as those provided by appellant here, affect interstate commerce indirectly and collaterally but not directly. The fact that Congress may regulate the restaurant or the service stations in matters incidental to their operations in no wise impresses the services rendered in a single state with the aura of "rendered in commerce."

The majority imparts persuasive effect to the fact that some of appellant's service stations are located on federal highways. I fail to perceive the slightest relevancy to the issue here. There is nothing in this record to indicate any federal ownership of any highways where stations are located. They simply have federal numbers. They are state highways constructed, maintained and policed by the state. The federal government is devoid of either exclusive or concurrent jurisdiction over them. "Federal highway" is a name without substance. It would not be indulgence in surmise to state that the customers in Bookbinder's traveled interstate over so-called "federal highways" to partake of the services rendered nor would it affect the rationale of that decision if all of the highways of ingress and egress accommodating the customers were stamped or marked "Federal highways."

It is inconceivable to me that Congress ever intended to substitute the activities of customers to relieve a trademark applicant of the requirement that the services of applicant be "rendered in commerce." The applicant must perform the services "in more than one state."

The majority rely strongly on Pure Oil Co. v. Puritan Oil Co., 127 F.2d 6 (2d Cir. 1942). In my judgment that case is not in point here. The fact that gasoline is consumed in other states is irrelevant because there is no question of a mark for *goods*. The mark here is for services rendered only in Ohio. In Pure Oil Co., supra, the gasoline was sold under the trademark in issue and consumed in other states—obviously a transportation across state lines. Here the services are rendered in only one state and completed before any consumption of gasoline or any other activity occurs in interstate commerce. Here, as far as appellant is concerned, there has been no movement (performance of services) in more than one state.

I am not persuaded, as the opinion of the majority would seem to indicate in effect, that the Congress in the exercise of its authority under the commerce clause of the Constitution ever intended that the definition of "use in commerce" in Section 45, respecting a service mark, should be so pre-emptively construed as to embrace a service merely collateral and incidental to and not directly affecting interstate commerce. As pointed out in the solicitor's brief, the Senate hearings on H.R. 82, 78th Congress, one of the series of the Lanham trademark bills which led to the enactment of the Trademark Act of 1946, made it clear that the intent and purpose of the bill was to limit its application to commerce among the several states and to foreign commerce as distinguished from intrastate commerce which might affect commerce among the states.

If it be a logical and supportable conclusion that appellant's services affect interstate commerce within the ambit of Section 45, then the same may be said of the farmer with the roadside fruit

stand, the operator of the roadside lunch counter and the filling station proprietor who wipes a windshield, all of whom cater to and serve the traveling public, both intra and interstate. I do not believe that the statute under consideration is susceptible to such a construction. I perceive a clear line of demarcation between such services performed for others engaged in interstate commerce and services actively rendered in commerce.

I would affirm the decision of the board.