The COCA–COLA COMPANY, Appellant,

v.

Charles R. STEWART, Mildred Stewart, d/b/a Crossroads of Riverside and Jockey Club Bar & Grill, Appellees.

The COCA–COLA COMPANY, Appellant,

v.

Lawrence P. MORAN, Ruth Moran, d/b/a Patricio Mexican Food, Appellees.

Nos. 79–1539, 79–1540.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1980.

Decided May 1, 1980.

Rynn Berry, Fish & Neave, New York City, for appellant; Joseph J. Kelly, Jr., and Curtis E. Woods, Spencer, Fane, Britt & Browne, Kansas City, Mo., Vincent N. Palladino and Charles P. Kennedy, New York City, and James W. Young and Elmer W. Hanak, Atlanta, Ga., on brief.

Arvid V. Zuber, Rosenwald, Jacob, Bressel, Jacob & Meglemre, Kansas City, Mo., for appellees in case number 79–1540; Jerold A. Bressel, Kansas City, Mo., on brief.

Before LAY, Chief Judge; BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Coca-Cola Co. appeals an order of the district court dismissing its actions against

appellees, who separately operate restaurants in Riverside and Kansas City, Missouri. Coca-Cola Co. filed the present lawsuits accusing appellees of contempt when they allegedly failed to comply with standing injunctions against passing off other products as Coca-Cola or Coke. The district court determined that, while appellees might well be guilty of such passing off, appellant Coca-Cola Co. had failed to establish federal subject-matter jurisdiction under either the Lanham Trade-Mark Act (Lanham Act)[1] or the federal diversity statute, 28 U.S.C. § 1332(a) (1976). Accordingly, it dismissed the suits. We reverse, holding that Coca-Cola established federal trademark jurisdiction.

## I. *Background.*

Coca-Cola Co., the appellant in these cases, sells carbonated beverages and their components under the federally registered trademarks "Coke" and "Coca-Cola." By common consent, these are two of the most widely recognized trademarks in the world today. In order to safeguard its trademarks against infringement, Coca-Cola Co. maintains a Trade Research Department. It is this department's responsibility to detect and stop the practice of passing off— *i.e.,* substituting other products in response to customer orders for Coca-Cola or Coke.

 Coca-Cola Co. brought suit against the Stewart defendants on September 13, 1972, after its investigators had ordered Coca-Cola or Coke on thirty-five occasions at the Stewarts' restaurants in Riverside, Missouri, and on each occasion had received another product. Coca-Cola Co. filed suit against the Morans on March 12, 1973, after its investigation showed that on twenty-six of twenty-seven occasions when investigators ordered Coca-Cola or Coke at the Morans' Mexican restaurants in Kansas City, another cola product was substituted. On November 22, 1972, and May 4, 1973, final judgments of injunction were entered by consent in these cases.[2]

In order to ascertain whether the appellees were honoring the terms of the injunctions, that is, whether they had ceased passing off substitute products as Coke, the appellant conducted further investigations between 1973 and 1975. These investigations revealed that, in the case of the Stewarts, a product other than Coca-Cola was substituted in response to thirty-one out of thirty-seven orders for Coca-Cola or Coke. In the case of the Morans, another product was substituted in twenty-five out of twenty-seven instances.

On October 14, 1975, appellant filed accusations of civil contempt against appellees. Because appellant sought punitive sanctions, the district court denied its motions and directed that it follow the procedures set forth in Fed.R.Crim.P. 42(b). Appellant then applied for an order directing appellees to show cause why contempt proceed-

---

1. The Lanham Act is codified at 15 U.S.C. §§ 1051–72, 1091–96, 1111–21, and 1123–27 (1976). 15 U.S.C. § 1121 provides as follows:

 The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

 This jurisdictional grant is implemented by 28 U.S.C. § 1338(a) (1976):

 (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

2. The judgments recited, *inter alia*:

 1. That the Court has jurisdiction of [these] action[s] for trademark infringement and unfair competition under the Trade-Mark laws of the United States (The Trade-Mark Act of July 5, 1946), 15 U.S.C., Sec. 1051ff., and under 28 U.S.C., Sec. 1338, and of the parties to [these] suit[s].

 During oral argument of this appeal, the court inquired whether these earlier recitals rendered the question of jurisdiction *res judicata*. Appellant did not raise this question below and, although noted for appeal, chose not to argue it before us. Under these circumstances, we do not consider whether appellees are precluded from contesting the issue of jurisdiction by reason of the 1972 and 1973 judgments. *Cf.* Fed.R.Civ.P. 8(c)(requiring that *res judicata* be pled as an affirmative defense).

ings should not be commenced, filing affidavits in support of its application. The district court, in a memorandum and order to show cause filed January 6, 1976, found "that there exists reasonable cause to believe that [its] injunctive orders * * * have been violated."

Shortly thereafter, the district court on its own motion directed the parties to brief the issue of the court's subject-matter jurisdiction. On May 9, 1979, the district court issued a memorandum and order dismissing appellant's suits. The court held first that the alleged infringement had not occurred "in commerce," as required by the Lanham Act. *See* 15 U.S.C. § 1114(1)(a) (1976). The court found that there was no evidence that the alleged substitution of some product for Coca-Cola by "purely local" restaurants occurred in commerce, or that it could have any effect on appellant's national operation. The court also held that the amount in controversy was less than the $10,000 required for federal diversity jurisdiction.[3] Citing *Seven-Up Co. v. Blue Note, Inc.*, 260 F.2d 584 (7th Cir. 1958), *cert. denied*, 359 U.S. 966, 79 S.Ct. 878, 3 L.Ed.2d 835 (1959), the court found that Coca-Cola had failed to establish a nexus between the apparent value of its goodwill and any injury to that goodwill resulting from appellees' acts of substitution.

## II. *Jurisdiction Under the Lanham Trade-Mark Act.*

■ The Lanham Act is a comprehensive statute designed to safeguard both the public and the trademark owner. Among other things, the statute prohibits "passing off" by a tradesman—*i. e.*, selling another's goods as those of the trademark owner, by use of the owner's mark. *Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664, 668 (2d Cir. 1968).

The major issue in this case is the effective reach of this prohibition. Under the terms of the statute, the prohibited act must occur "in commerce." 15 U.S.C. § 1114(1)(a) (1976). 15 U.S.C. § 1127 (1976) explains:

The word "commerce" means all commerce which may lawfully be regulated by Congress.

\* \* \* \* \* \*

The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce[.]

The legislative history of the Lanham Act underlines this intention: "[S]ound public policy requires that trade-marks should receive nationally the greatest protection that can be given them." S.Rep. No. 1333, 79th Cong., 2d Sess., *reprinted in* [1946] U.S.Code Cong.Serv., 1274, 1277.

■ By consistent interpretation, jurisdiction under the Lanham Act encompasses intrastate activity that substantially affects interstate commerce. *See, e. g., Iowa Farmers Union v. Farmers' Educational & Coop. Union*, 247 F.2d 809, 816 (8th Cir. 1957); *Drop Dead Co. v. S. C. Johnson & Son, Inc.*, 326 F.2d 87, 94 (9th Cir. 1963), *cert. denied*, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964); *Franchised Stores of New York, Inc. v. Winter, supra*, 394 F.2d at 669. Thus, "in commerce" refers to the impact that infringement has on interstate use of a trademark; it does not mean that an infringer is immune from prosecution under the statute so long as he keeps his infringement entirely within the confines of a state. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488 (5th Cir. 1971). "A substantial effect on interstate commerce is present when the trademark owner's reputation and good will, built up by use of the mark in interstate commerce, are adversely affected by an intrastate infringement." *Franchised Stores of New York, Inc. v. Winter, supra*, 394 F.2d at 669 (citations omitted).

This broad focus comports fully with the modern scope of the commerce clause. The Supreme Court has many times upheld the application of national legislation to purely local activities. For example, in *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed.

---

**3.** Diversity of citizenship exists between Coca-Cola Co. and each appellee.

122 (1942), a small farmer challenged federal limitations on the amount of wheat that he could grow for consumption on his farm. The Supreme Court observed:

 That appellee's own contribution to the demand for wheat may be trivial by itself is not enough to remove him from the scope of federal regulation where, as here, his contribution, taken together with that of many others similarly situated, is far from trivial. [*Id.* at 127–128, 63 S.Ct. at 90 (citations omitted).]

Generally speaking, if a class of activities is within the reach of federal regulation, the courts have no power to excise individual instances as trivial. *See, e. g., Perez v. United States,* 402 U.S. 146, 154, 91 S.Ct. 1357, 1361, 28 L.Ed.2d 686 (1971).[4]

In this case, however, the district court found that Coca-Cola Co. had failed to show that appellees' passing off "could have had *any* direct and material effect on [its] national operation; not to mention 'a substantially adverse effect' * * *." Yet, the affidavits submitted to the district court indicate that over one million gallons of fountain syrup a year were sold by Coca-Cola Co. in metropolitan Kansas City between 1969 and 1972.[5] Coke was widely advertised in the area, and appellant sought to maintain its reputation for high quality products. On a national level, appellant spent over $45,000,000 a year in advertising and marketing of its product. The annual budget of the Trade Research Department in these same years exceeded $350,000.

 We believe that these allegations, which are not disputed, support an inference that appellees' acts of passing off substantially affected appellant's interstate operations. The appropriate vantage point is that of the trademark holder. So viewed, appellees' actions jeopardized appellant's carefully nurtured reputation and undermined its claim to a distinctive (*i. e.,* nongeneric) trademark. That appellees' acts of infringement, standing alone, may not have cost Coca-Cola Co. a great deal in terms of lost sales does not detract from the fact that they served to misappropriate appellant's valuable goodwill, which rests on the distinctiveness of its federally protected trademark. The acts of these local retailers must be deemed, in the circumstances of this case, to have had a substantial effect on interstate commerce. *See Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117, 120 (9th Cir.), *cert. denied,* 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968).

Appellees rely chiefly on *Application of Bookbinder's Restaurant,* 240 F.2d 365, 44 C.C.P.A. 731 (1957), and *Peter Pan Restaurants v. Peter Pan Diner,* 150 F.Supp. 534 (D.R.I.1957), in support of the district court's holding. Both cases determined that activities of purely local restaurants lie outside the Lanham Act. The *Bookbinder's* decision, however, reflects the Patent Office's once-narrow view of federal trademark registrability, a view never adopted by the federal courts with respect to infringement actions and one since rejected by the Patent Office itself. *See* 1 Gilson, *Trademark Protection and Practice* §§ 8.03[3] and 3.02[5] (1976). The *Peter Pan* case can be distinguished on its facts; moreover, it and the cases it cites reflect a minority position that has been widely criticized. *See, e. g.,* 1 Gilson, *supra,* at § 8.03[3].

**4.** Appellees attempt to distinguish these cases on the basis that they involve matters of broad public policy, rather than merely a claim of substitution or unfair competition. In light of the scope and the legislative history of the Lanham Act, we find this purported distinction unconvincing. We are similarly unconvinced by appellees' efforts to distinguish away the many trademark cases that establish federal subject-matter jurisdiction over purely intrastate activities. *See, e. g., Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117

(9th Cir.), *cert. denied,* 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968); *Pure Foods v. Minute Maid Corp.,* 214 F.2d 792 (5th Cir.), *cert. denied,* 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 697 (1954). In our view, the nature of the underlying infringement is largely irrelevant to the question of federal trademark jurisdiction.

**5.** As we understand the record, the soft drinks sold by appellees were fountain drinks consisting of a cola syrup mixed with carbonated water and ice.

In our view, this case is governed by the holdings in *Franchised Stores of New York, Inc. v. Winter, supra; Maier Brewing Co. v. Fleischmann Distilling Corp., supra*; and *Pure Foods v. Minute Maid Corp.*, 214 F.2d 792 (5th Cir.), *cert. denied*, 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 697 (1954). In all three cases the courts found that the potentially adverse effects of infringement on the plaintiff's reputation and goodwill satisfied the "substantial effect" test. Coca-Cola similarly satisfied the jurisdictional test in the present case. Apart from the clear authority supporting this conclusion, we believe that a contrary holding would seriously undermine the congressional intent behind the Lanham Act—namely, to protect the holders of federally registered trademarks. It would imply that local infringers could pirate a national mark with virtual impunity from federal restrictions, inflicting "death by a thousand cuts" upon the trademark holder.

Accordingly, we reverse the judgment of the district court. The cases will be remanded to that court for further proceedings consistent with this opinion.[6]

---

**6.** In light of this disposition, we find it unnecessary to reach appellant's argument that the amount in controversy is greater than $10,000, as required for federal diversity jurisdiction.