**LARRY HARMON PICTURES CORPORATION, Appellant,**

v.

**The WILLIAMS RESTAURANT CORPORATION, Appellee.**

No. 89–1336.

United States Court of Appeals, Federal Circuit.

March 27, 1991.

David Ehrlich, Weiss David Fross Zelnick & Lehrman, P.C., New York City, argued, for appellant.

Susan B. Flohr, Lalos & Keegan, Washington, D.C., argued, for appellee. With her on the brief was Francis A. Keegan.

Before MARKEY,* NEWMAN and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

This is an appeal from the grant of a summary judgment by the United States Patent and Trademark Office Trademark Trial and Appeal Board (board), Opposition No. 73,217 (January 13, 1989), dismissing the opposition of Larry Harmon Pictures Corporation (Harmon) to the application for registration by The Williams Restaurant Corporation (Williams) of the service mark BOZO'S for restaurant services. On the sole issue raised by Harmon's opposition, the board held that Williams "satisfied the use in commerce requirement of Section 3"

---

* Circuit Judge Markey vacated the position of Chief Judge on June 27, 1990.

of the Lanham Trademark Act of 1946, 15 U.S.C. § 1053 (1988). We affirm.

I

The board found the following facts to be undisputed. Williams has operated BOZO'S pit barbecue restaurant in Mason, Tennessee, since 1932. Mason is about a 50 or 60 minute drive from Memphis, Tennessee, which is a large city and a major commercial center for the Mid–South region. The Memphis metropolitan statistical area comprises not only a portion of Tennessee, but also portions of Mississippi and Arkansas. As conceded by Harmon before the board, BOZO'S "restaurant is obviously popular with Memphis residents ... It is close enough (50–60 minutes) to make a pleasant outing from the city. Articles ... from Memphis newspapers and magazines also refer to the restaurant's popularity with Memphis residents." In addition, BOZO'S restaurant has been at least mentioned in publications originating in New York, New York; Washington, D.C.; Dallas, Texas; Gila Bend, Arizona; and Palm Beach, Florida. Further, according to the board's opinion, "[t]here is no dispute that BOZO'S restaurant services are rendered to interstate travelers" and Harmon "acknowledges that applicant's restaurant ... serves some interstate travelers."

The board concluded on the basis of these "undisputed facts" that Williams had made use of its service mark BOZO'S in a manner sufficient to satisfy the use in commerce requirement of Section 3 of the Lanham Act. The board, therefore, granted Williams' motion for summary judgment and dismissed Harmon's opposition. In doing so it stated that it "resolve[d] all factual disputes in favor of [Harmon]" and "construe[d] all inferences to be drawn from established facts in the light most favorable to [Harmon]." The proper standard for considering a summary judgment motion was therefore applied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").[1]

II

The only issue in this appeal is whether the board correctly concluded that the "use in commerce" requirement set forth in Section 3 of the Lanham Act is satisfied by the service in a single-location restaurant of interstate customers. Harmon argues that the use in commerce requirement of Section 3 cannot be satisfied by a single-location restaurant, such as BOZO'S, that serves only a minimal number of interstate travelers. In support of its argument, Harmon relies on *In re Bookbinder's Restaurant, Inc.*, 240 F.2d 365, 44 CCPA 731, 112 USPQ 326 (1957), in which a single-location restaurant in Philadelphia was not permitted to register its service mark. Harmon further contends that if the *Bookbinder's* rule—which it interprets to be that single-location restaurants, not located on an interstate highway, cannot be considered as rendering services in commerce—seems too restrictive, this court

---

1. In the proceedings below, Miss Williams' affidavit estimated "that 15% of BOZO's business each year is with customers from other states. This has been true for many years including prior to October 28, 1982." Supporting the fact that restaurant services were rendered to interstate travellers, the board also had before it the stipulated pages from the visitor's register maintained by BOZO's restaurant for a period subsequent to the application filing date and a number of affidavits and letters from persons out of state who had patronized BOZO's at various times prior to the application filing date. The only contrary evidence before the board was that Harmon's representative visited the restaurant from 11:00 a.m. to 1:00 p.m. on June 29, 1987, and "did not see a single customer who seemed to be from out-of-state or a single out-of-state car in the restaurant's parking lot." The board's holding implicitly recognized that this evidence was not adequate to raise a genuine issue of material fact. *See* Fed.R.Civ.Proc. 56(c). Harmon argues that Miss Williams' affidavit is "biased and self serving" and "suspect for many reasons." The arguments of Harmon's counsel are insufficient to raise a genuine issue of material fact where there is an absence of probative evidence conflicting with the evidence presented by Williams. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2511 ("If the [non-movant's] evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted.").

should adopt the test that a single-location restaurant is not entitled to register its service mark unless (1) it is located on an interstate highway, (2) at least 50% of its meals are served to interstate travelers, or (3) it regularly advertises in out-of-state media. We decline to circumscribe the statute in the manner suggested.

Section 1 of the Lanham Act provides that the "owner of a trade-mark *used in commerce* may apply to register his trade-mark under this chapter." 15 U.S.C. § 1051 (1988) (emphasis added). Section 3 of the Act states that "service marks shall be registrable, in the same manner and with the same effect as are trade-marks." 15 U.S.C. § 1053 (1988). In general, therefore, service marks must be "used in commerce" before they may be registered.

Section 45 of the Lanham Act provides the following definitions for the word "commerce" and the phrase "use in commerce:"

> The word "commerce" means *all commerce which may lawfully be regulated by Congress.*
>
> . . . .
>
> For purposes of this chapter a mark shall be deemed to be in use in commerce ... on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127 (1988) (emphasis added).

Congress has broad powers under the commerce clause of the United States Constitution, Art. 1, sec. 8, to regulate interstate commerce. In *In re Silenus Wines, Inc.,* 557 F.2d 806, 194 USPQ 261 (CCPA 1977), this court's predecessor observed that the Lanham Act represented a change in the scope of federal trademark jurisdiction and that in making the change "Rep. Lanham and his subcommittee," and presumably the Congress, were "mindful of the broad scope of Congressional regulatory powers which the Supreme Court has

sanctioned." *Id.* at 810, 194 USPQ at 265. The CCPA stated:

> In the Lanham Act, Congress set out what appears to be an unambiguous statement of the scope of federal trademark jurisdiction, namely, "all commerce which may lawfully be regulated by Congress." 15 USC 1127 (1976). This language represents an obvious change from the phrasing of the former trademark acts, which phrasing expressly limited trademark jurisdiction to interstate and foreign commerce and commerce with Indians. [Footnote omitted.] The change clearly involves a broadening of jurisdiction.[10]
>
> [10] The Supreme Court, looking at the change as it applied to infringement, expressly recognized "the broadened commerce provisions of the Lanham Act." *Steele v. Bulova Watch Co.,* 344 U.S. 280, 287, 73 S.Ct. 252, 256, 97 L.Ed. 319, 95 USPQ 391, 394 (1952).

*Silenus Wines,* 557 F.2d at 809, 194 USPQ at 264–65.

Harmon's position is based primarily on *In re Bookbinder's,* but in that case the court's decision reflects clearly the failure to prove *any* use in commerce. The court observed that "[t]he record indicates that appellant operates a single restaurant in Philadelphia, Pennsylvania, and the services relied on are rendered in that city," and that "[t]here are no affidavits or testimony of record and the application states merely that the mark is used 'for restaurant, catering and banquet services.'" 240 F.2d at 366, 368, 112 USPQ at 326, 328. The court also discounted as not probative the "unverified statement [by the applicant's attorney] that the services were offered to customers and prospective customers in states adjoining Pennsylvania." 240 F.2d at 368, 112 USPQ at 328.

In *In re Gastown, Inc.,* 326 F.2d 780, 51 CCPA 876, 140 USPQ 216 (1964), decided seven years after *Bookbinder's,* the CCPA again discussed the "use in commerce" requirement set forth in Section 3 of the Lanham Act. In *Gastown,* the appellant operated a chain of automobile and truck service stations, some of which were located on federal highways. Although the services rendered by the appellant were con-

fined to the State of Ohio, some of appellant's customers had their legal situs in other states, were engaged in interstate commerce when served by appellant in Ohio, and were extended credit and billed in their respective domiciliary states. The court held that those circumstances established that the services had a direct effect on interstate commerce and were sufficient to show that applicant's mark was used in commerce within the meaning of Sections 3 and 45 of the Lanham Act.

The *Bookbinder's* and *Gastown* decisions are distinguishable from each other on the basis of the underlying evidence before the board in each case. *See Gastown*, 326 F.2d at 784, 140 USPQ at 218 (noting the deficiency in proof of interstate commerce in *Bookbinder's* and stating that "[n]o weight ... was given to those unverified statements"). In *Bookbinder's*, the evidence of record indicated that the applicant's services were not "rendered in commerce" within the meaning of the Act. In *Gastown*, the opposite was true. 326 F.2d at 782, 140 USPQ at 217.

■ While the facts supporting Williams' contention that its service mark is used in commerce are not as extensive, or as persuasive, as those in *Gastown*, we are convinced they are sufficient to satisfy the statutory requirement for registration. In *Gastown*, the court approved the Fifth Circuit's observation that in enacting the Lanham Act "[i]t would seem that ... Congress intended to regulate interstate and foreign commerce to the full extent of its constitutional powers," *Gastown*, 326 F.2d at 784, 140 USPQ at 218 (quoting the Fifth Circuit's decision in *Bulova Watch Co. v. Steele*, 194 F.2d 567, 571, 92 USPQ 266, 269 (5th Cir.), *aff'd*, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952)).

Again, in *Silenus Wines*, the CCPA pointed to the "broadened commerce provisions of the Lanham Act" (quoting the Supreme Court's decision in *Steele v. Bulova Watch Co.*, 344 U.S. at 287, 73 S.Ct. at 256) and stated that the changed language regarding use in commerce in the Lanham Act "clearly involves a broadening of jurisdiction." 557 F.2d at 810, 194 USPQ at 265. The court also quoted from the Supreme Court's decision in *Wickard v. Filburn*, 317 U.S. 111, 125, 63 S.Ct. 82, 89, 87 L.Ed. 122 (1942), as indicating the scope of Congressional regulatory powers that the Supreme Court had sanctioned prior to the passage of the Lanham Act. Moreover, the *Silenus Wines* court found support for the broadened trademark jurisdiction in other federal courts' decisions which applied the infringement provisions of the Lanham Act:

> Our *Gastown* decision and this opinion are further fortified by the manner in which other federal courts have treated these terms, "use in commerce" and "commerce," when used in the infringement portion of the Lanham Act. [Footnote omitted.] Courts have uniformly held, in the infringement context, that "commerce" includes intrastate transactions that affect interstate or foreign commerce. [Footnote omitted.] We see no basis for the meaning of commerce in the registration context to be different from the meaning in the infringement context, particularly since the meanings both derive from the *same* definition in 15 USC 1127 (1976).

557 F.2d at 811–12, 194 USPQ at 266–67 (emphasis in original).

In *Silenus Wines*, the CCPA expressly rejected the position of the Patent and Trademark Office that the statute is ambiguous and that the various statements in legislative history "contradict and overshadow [the] statutory definition of commerce." *Id.* 557 F.2d at 810–11, 194 USPQ at 265–66. The CCPA found instead that the Lanham Act contains "a clear and unambiguous definition of federal trademark jurisdiction" and that "with unambiguous language in a statute, it is improper to consider extrinsic sources like legislative history to raise ambiguities." *Id.* (footnote omitted). It also noted that "[w]hile some of the other hearing participants appear to have taken a position contrary to the language of the statute, their opinions as to what the statute should have said will not be used to reverse clear, contrary language

in the statute." *Id.* at 811, 194 USPQ at 266.

■ Thus, our predecessor court whose decisions are binding on us, *South Corporation v. United States*, 690 F.2d 1368 (Fed.Cir.1982) (in banc), has unequivocally held that the definition of commerce in the Lanham Act means exactly what the statute says, *i.e.*, "all commerce which may lawfully be regulated by Congress." In view of our precedent as to the scope of the use in commerce provision of the Lanham Act, we must reject Harmon's contention that its suggested non-statutory limitations, *i.e.*, location on an interstate highway, or 50% of the meals furnished to interstate travelers, or regular advertising in out-of-state media, should be imposed on the registration of a mark used by a single-location restaurant.

■ The record here established that the BOZO'S mark has been used in connection with services rendered to customers traveling across state boundaries. It is not required that such services be rendered in more than one state to satisfy the use in commerce requirement. *See Gastown*, 326 F.2d at 782–84, 140 USPQ at 217–18; *see also In re Smith Oil Corp.*, 156 USPQ 62, 63 (TTAB 1967); 1 J. McCarthy, *Trademarks and Unfair Competition*, § 19:36.A at page 960 (2d ed. 1984). Harmon does not dispute that there has been some use in commerce of Williams' mark. It contends only that the volume of such activity was less than Williams' affidavit would indicate. Harmon, however, has produced no evidence to counter the proof of interstate activity by Williams, and its reliance on attorney arguments is similar to the situation in *Bookbinder's* where such arguments were given no weight. *See Bookbinder's*, 240 F.2d at 368, 112 USPQ at 216; *Gastown*, 326 F.2d at 784, 140 USPQ at 218.

We therefore reject Harmon's argument that a certain increased threshold level of interstate activity is required before registration of the mark used by a single-location restaurant may be granted. The Lanham Act by its terms extends to all commerce which Congress may regulate. This court does not have the power to narrow or restrict the unambiguous language of the statute. Accordingly, we affirm the decision of the board.

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, dissenting.

This appeal raises questions of procedure and law, in both of which the Trademark Trial and Appeal Board erred. I respectfully dissent from this court's endorsement of those errors.

I

*Procedure*

Particularly in an administrative proceeding of the Trademark Board, where the entire record is documentary and the factual premises few, there is scant benefit to imposing the strictures of Federal Rule 56 when there are material facts in dispute. The public and governmental interest in prompt and final resolution of disputes by administrative agencies is not served by too facile application of the rules governing summary judgment, with its required inferences and presumptions and burdens. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Indeed, in this case the Board incorrectly adopted the movant's version of disputed facts, and improperly shifted the burden of proof on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

This case turns on the material and disputed fact of the effect on interstate commerce of the restaurant services at Bozo's Bar–B–Que Restaurant of Mason, Tennessee. Finding this fact is predicate to determination of whether the restaurant services were "rendered in commerce" in terms of Section 45 of the Lanham Act:

15 U.S.C. § 1127 [Section 45].

\* \* \* \* \* \*

The word "commerce" means all commerce which may lawfully be regulated by Congress.

\* \* \* \* \* \*

For purposes of this chapter, a mark shall be deemed to be in use in commerce—

. . .

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

It was undisputed that Bozo's Restaurant services were not rendered in more than one state or in this and a foreign country. Thus the applicant was required to show that the services were "rendered in commerce". In connection with that showing the parties disputed, *inter alia*, the factual issue of the extent of patronage of Bozo's Restaurant by customers from other states. This issue was material to determination of whether the restaurant's services were "rendered in commerce".

The Board erred in accepting, on summary judgment, the movant's version of this fact. The Board also erred in law, in holding that "some" contact with interstate commerce suffices to cause single-location restaurant services to be "rendered in commerce" within the meaning of the Lanham Act. The Board's explanation, that it would be burdensome on the trademark examination system to ascertain the actual effect on commerce of such intrastate services, is insufficient reason to depart from the Lanham Act, with its balances, safeguards, and reasoned jurisprudence.

## II

### Single–Location Restaurant Services

Unlike the interstate movement of goods for purposes of trademark registration, the services of a single-location restaurant do not move across state borders. Federal registration of such service marks invokes other criteria, all of which relate to the extent of interstate contact of the local service establishment. With sufficient interstate contact, services provided entirely intrastate may indeed satisfy the Lanham Act requirements. A useful body of decisional law has developed, providing legal analysis and guidance in the context of statutory intent and public policy.

### A

Precedent is sparse for single-location restaurants. The only court decision cited is *In re Bookbinder's Restaurant, Inc.*, 240 F.2d 365, 44 CCPA 731, 112 USPQ 326 (1957), wherein the CCPA held that the applicant did not make a sufficient showing to establish that its services were rendered in commerce within the meaning of the Lanham Act, the court holding that attorney argument alone was insufficient. *Id.* 240 F.2d at 368, 112 USPQ at 328. In *In re Smith Oil Corp.*, 156 USPQ 62 (TTAB 1967) the Board authorized registration of the service mark of a single-location restaurant located on an interstate highway, where "many, if not the majority" of the patrons were from out-of-state. *Id.* at 62.

For services other than restaurants there is substantial authority, accompanied by edifying analysis. In *In re Gastown*, 326 F.2d 780, 51 CCPA 876, 140 USPQ 216 (1964) federal registration was granted for the service mark of a chain of automobile and truck service stations located only in Ohio; the CCPA held that the location of some of these stations on interstate highways, the frequent patronage by out-of-state vehicles and persons engaged in interstate commerce, the road service provided to disabled vehicles from out-of-state, and the extension of credit and out-of-state billing, were sufficient to show that the services rendered had a "direct effect" on commerce. *Id.* 326 F.2d at 784, 140 USPQ at 218.

In *In re Silenus Wines, Inc.*, 557 F.2d 806, 194 USPQ 261 (CCPA 1977) the CCPA discussed its holding in *Gastown*, explaining that a service mark is used in commerce when the services "directly affect interstate commerce". *Id.* 557 F.2d at 808 & n. 3, 194 USPQ at 263 & n. 3. The court

stated that such direct effect requires that two elements pertain, *i.e.,* "when the services are sold intrastate to persons moving in interstate commerce, and the services are of the type necessary for the accomplishment of the interstate commerce." *Id.* The court held that *Silenus Wines'* trademark was used in commerce because it was affixed to bottles of wine that were imported from France and sold intrastate, remarking that "appellant's sale within Massachusetts was so intimately involved with foreign commerce as to become a 'use in commerce' as defined in the Lanham Act". *Id.* at 809, 194 USPQ at 264. As applied to the case at bar, I can not agree with the panel majority that *Silenus Wines* supports a broadened scope of the Lanham Act.

To the contrary, in accord with the *Silenus Wines* discussion of the criteria for service mark registration, the Board refused registration of the service mark of a beauty shop, *In re Conti,* 220 USPQ 745 (TTAB 1983), and a service mark for housing development and real estate services, *In re U.S. Home Corp. of Texas,* 199 USPQ 698, *recon. denied,* 201 USPQ 602 (TTAB 1978). In *Conti* the Board rejected the applicant's argument that its local beauty salon services were rendered in commerce for purposes of the Lanham Act because it was a public accommodation regulable under the Civil Rights Act. 220 USPQ at 747. In *U.S. Home* the Board rejected the argument that because the real estate services were governed by the Federal Fair Housing Act that bars discrimination in housing, the services were rendered in commerce for purposes of the Lanham Act. *Id.,* 199 USPQ at 701–02. These cases correctly implement the premise that the criterion for registration under the Lanham Act is whether the services are rendered in commerce.

### B

Federal service mark registration is a statutory grant, enlarging common law rights. The requirement of the words "rendered in commerce" is of carefully delineated scope, and is not identical to the scope of different words in other statutes. See the discussion in *United States v. Gillies,* 851 F.2d 492, 493, 494 (1st Cir.), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988), of such statutory usages as "in commerce", "engaged in commerce", and "affecting commerce". Thus in *U.S. Home* the Board correctly held that the effect of prohibited discrimination on commerce does not mean that the accompanying local service mark is registrable under the Lanham Act. These are different issues, and the issue of applicability of the Lanham Act turns on whether Congress intended to authorize nation-wide registration of the service marks of local restaurants when Congress used the phrase "services ... rendered in commerce"; not whether it has the power to do so under the Constitution.

The distinction between the power to legislate, and the intended scope of a specific act of Congress, pervades judicial decisions. The Supreme Court summarized the truism that not all legislation based on the Commerce Clause invokes the full power of Congress:

> The phrase "in commerce" does not, of course, necessarily have a uniform meaning whenever used by Congress.

*United States v. American Building Maintenance Industries,* 422 U.S. 271, 277, 95 S.Ct. 2150, 2155, 45 L.Ed.2d 177 (1975) (holding that the usage "engaged in commerce" of the Clayton Act was not intended to be coextensive with the reach of congressional power under the Commerce Clause, and was intentionally narrower than the usage "affecting commerce").

Thus the determination of how much interstate contact is required to transform a single-location restaurant's local services into services rendered in commerce must be decided in view of the statute governing federal service mark registration. Congress was not silent as to its intent that intrastate commerce shall be excluded. The legislative history of the Lanham Act clearly shows the purpose to deny federal registration to marks for "local matters

that affect or hamper interstate commerce":

Senator PEPPER: Mr. Kelley [testifying for the Federal Trade Commission] ... would you mind suspending at this point so that we may get a statement from Miss [Daphne] Robert [testifying for the American Bar Association] as to whether it is her opinion that it is the intent of Congress that this bill shall apply to any sort of intrastate commerce?

Mr. KELLEY: Yes, Sir.

Miss ROBERT: That is not my understanding of it, Senator.

Senator PEPPER: It is your understanding that it is the intent of the bill, and if enacted will be the intent of Congress, to apply only to commerce among the States?

Miss ROBERT: That is my understanding—and foreign commerce.

Senator PEPPER: Very well. Is that the general opinion of the people who are here today as proponents of it?  * * *

Senator PEPPER: I should like the record to show that, by their silence, those who are here today as proponents of the bill have agreed to the statement of [Congressman] Lanham, the author of the bill, and of Miss Robert, who has been regarded as one of the able spokesmen for it, that it is the intention of the bill to apply only to commerce among the States and to foreign commerce.

Mr. KELLEY: And not to local matters that affect or hamper interstate commerce.  That is the point, I think.

Senator PEPPER: That is correct.

*Hearings on H.R. 82 before a Subcommittee of the Senate Committee on Patents*, 78th Cong., 2d Sess. at 133 (1944).

Thus the courts and the trademark registration authorities have required, for registration of local service marks, more than "some" contact with interstate commerce. Shortly after enactment of the Lanham Act, the Assistant Commissioner for Trademarks, stating that the Act required that registrable services be *"actively rendered in* interstate commerce", denied federal registration to the service mark of an auto-

mobile paint shop despite its location on an interstate highway serving cars with out-of-state license plates and its advertising in newspapers with interstate circulation. *In re Gill*, 87 USPQ 274, 275 (Comm'r Pat. 1950). Subsequent rulings did not depart from this standard.

## C

The Board held that the provision at Bozo's Bar–B–Que Restaurant of services to some interstate travellers, accompanied by a few free mentions in out of state publications, satisfied the "rendered in commerce" requirement of the Lanham Act.

The parties disputed the extent of interstate patronage, the applicant estimating that fifteen percent of its customers were from out-of-state, and the opposer observing that during a busy lunchtime there were no cars at all with out-of-state licenses. Bozo's Restaurant had received four or five mentions by newspaper columnists in other states and in a cookbook, but all but one of these instances occurred after the filing date of the application for federal registration. Use in commerce, to support a trademark application, must be made before the filing date of the application. 15 U.S.C. § 1051(a) [Section 1 Lanham Act].

Further, an unsolicited mention in an article is not "use" in commerce. Such evidence has served with varying success to support a claim to priority, but not to support registration. *See Old Swiss House, Inc. v. Anheuser–Busch, Inc.*, 569 F.2d 1130, 1133, 196 USPQ 808, 810 (CCPA 1978) (references to a mark "buried in the body of the articles" is "not the type of public exposure of a mark that would be expected to have any significant impact on the purchasing public.") The Board erred in relying on this evidence.

Other factual circumstances that were generally undisputed add weight to the strictly local nature of Bozo's Restaurant: It was not on an interstate highway or near a state line. It was not listed in any travel guide. It was not listed in any restaurant guide. It was not advertised in any out-of-

state media. It had no liquor license, accepted no credit cards, and took no reservations. It was closed on Sundays.

Even if the rules governing summary judgment were correctly ignored by the Board, these facts do not meet the threshold criterion of services "rendered in commerce", as defined by law and policy.

This court can not ignore the potential impact on all commerce of authorizing national registration of local marks based on reduced standards for determining use in commerce: the issue on which Senator Pepper sought assurance from Congressman Lanham and Miss Robert. The Lanham Act does not and need not apply to predominantly local services. The state trademark registrations of fifty states are designed for this purpose.

I would reverse the Board's grant of summary judgment, and remand for development of an adequate evidentiary record and application of the correct law to the found facts.