THIS OPINION IS CITABLE AS
PRECEDENT OF THE TTAB

Mailed:  March 31, 2006
PTH

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———

**Trademark Trial and Appeal Board**

———

Maids to Order of Ohio, Inc.
v.
Maid-to-Order, Inc.

———

Cancellation No. 92040571

———

Michael A. Marrero of Ulmer & Berne, LLP for Maids to Order of Ohio, Inc.

Vangelis Economou of Ryndak & Suri for Maid-to-Order, Inc.

———

Before Seeherman, Hairston and Bucher, Administrative Trademark Judges.

Opinion by Hairston, Administrative Trademark Judge:

Maids to Order of Ohio, Inc. (an Ohio corporation; hereinafter MTO-Ohio) has petitioned to cancel the registration of Maid-to-Order, Inc. (an Illinois corporation; hereinafter MTO) for the mark MAID TO ORDER for "cleaning of domestic and business premises."[1]

---

[1] Registration No. 1,155,884, issued May 26, 1981, which sets forth a date of first use of the mark anywhere of November 21, 1971 and a date of first use in commerce of December 10, 1974; Section 8 and 15 affidavit filed and acknowledged, respectively; renewed.

In the petition to cancel, MTO-Ohio asserts that it is the owner of the registered mark MAIDS TO ORDER for the following services:

> franchising, namely, offering technical assistance in the establishment and operation of commercial and residential maid services and carpet cleaning services in International Class 35; and

> maid services in class 37;[2]

that it adopted and has continuously used the mark MAIDS TO ORDER in connection with such services since as early as November 1986; that the services identified in MTO's registration are closely related and in some instances identical to MTO-Ohio's services; and that MTO committed fraud upon the United States Patent and Trademark Office (USPTO) in the procurement and maintenance of its registration. In particular, MTO-Ohio alleges that MTO's statement in the underlying application, the Section 8 declaration, and the application for renewal, that the mark MAID TO ORDER had been used or was in use in interstate commerce constitutes a material false misrepresentation

---

[2] Registration No. 2,466,602, issued on July 3, 2001, which alleges a date of first use of the mark in commerce of 1988 in connection with both classes.

because MTO has not used the mark in interstate commerce.[3]

MTO, in its answer, denied the essential allegations of the petition to cancel and asserted as an affirmative defense that MTO-Ohio adopted its mark with knowledge of MTO's mark and that MTO-Ohio is guilty of unclean hands. In addition, MTO asserted a counterclaim to cancel MTO-Ohio's pleaded registration on the grounds of fraud and Section 2(d) likelihood of confusion. MTO alleges that MTO-Ohio committed fraud upon the USPTO in the procurement of its registration because when MTO-Ohio filed its application, it knew of MTO's prior rights in the mark MAID TO ORDER for cleaning services, and yet failed to disclose those rights. Further, MTO alleges that it adopted and has continuously used the mark MAID TO ORDER in connection with the cleaning of domestic and business premises since 1971; that this is long prior to MTO-Ohio's first use of the mark MAIDS TO ORDER; and that MTO-Ohio's mark so resembles MTO's previously used and registered mark as to be likely to cause confusion, or to cause mistake or to deceive.

---

[3] Also, MTO-Ohio alleges that MTO committed fraud when, in a cancellation proceeding involving MTO and a third-party, MTO alleged that MTO "is using the mark [MAID TO ORDER] in the Chicago metropolitan area; state of Illinois; northwestern Indiana; state of Wisconsin; and has in the past utilized the mark in the state of California and in Mexico." The Board cannot consider in this proceeding purportedly fraudulent allegations made in another proceeding. Thus, MTO-Ohio's "claim" of fraud in this regard is not a claim upon which relief may be granted, and we have given no further consideration to this allegation.

MTO-Ohio, in its answer to MTO's fraud and Section 2(d) likelihood of confusion counterclaims, denied the essential allegations thereof.

Evidentiary matters

At the outset, we must discuss several evidentiary matters. We note that MTO-Ohio has filed a copy of the discovery deposition of MTO's president, Coralee Kern. The discovery deposition was not submitted by notice of reliance as required by Trademark Rule 2.120(j). However, this rule does permit a party to submit the discovery deposition of its adversary, and in this case, MTO has treated the discovery deposition as being of record by referring to the deposition in its brief on the case. Thus, the discovery deposition is considered to have been stipulated into the record.

Further, MTO filed by notice of reliance a copy of the declaration (with exhibits) of its president, Coralee Kern, which was originally submitted in support of MTO's motion for summary judgment. Although these types of materials generally may not be submitted by notice of reliance, MTO-Ohio has not objected thereto and indeed has treated the materials as being of record by referring to them in its brief on the case. Thus, the materials are considered to have been stipulated into the record.

4

Also, we note that each party, by notice of reliance, seeks to rely on the adverse party's responses to requests for production of documents. Although responses to requests for production of documents generally may not be submitted by notice of reliance (See Trademark Rule 2.120(j)(3)), because each party has treated the materials as though they can be made of record in this fashion, each party's responses are considered to have been stipulated into the record.

Finally, on January 30, 2006, well after the testimony and briefing periods had closed in this case, MTO-Ohio filed, by "supplemental" notice of reliance, the affidavit of its current president, John Davies, together with printouts of several pages from MTO's website. MTO has moved to strike the supplemental notice as untimely, having been filed outside MTO-Ohio's testimony periods in both the cancellation and counterclaim. See Trademark Rule 2.121. MTO's motion to strike is granted and we have not considered the affidavit and printouts in reaching our decision herein.

The Record

Thus, the record consists of the pleadings; the files of the involved registrations; the testimony depositions (with exhibits) of MTO-Ohio's witness, Joseph Jefferys, and MTO's witness Coralee Kern; and the discovery deposition (with exhibits) of Ms. Kern. MTO-Ohio submitted MTO's

5

responses to interrogatories and request for production of documents. MTO submitted MTO-Ohio's responses to interrogatories, requests for production of documents, and requests for admissions; and the declaration (with exhibits) of Ms. Kern which was submitted in support of MTO's motion for summary judgment.[4]

Briefs have been filed, but no oral hearing was requested.

The Parties

MTO-Ohio

MTO-Ohio offered the testimony deposition of its vice-president, Joseph Jefferys. MTO—Ohio began doing business in Ohio in 1987. (Jefferys dep. at 4). MTO-Ohio "is a corporation that was founded on professional residential/commercial office cleaning services that was turned into a franchise and [Mr. Jefferys and his wife] are the franchise owners." (Dep. at 3-4). Mr. Jefferys came up with the mark MAIDS TO ORDER. (Dep. at 5). Mr. Jefferys learned of MTO's registration for the mark MAID TO ORDER in "early October 1992" as a result of an online search. (Dep. at 6-7). Thereafter, he telephoned MTO's president, Coralee Kern, and his testimony concerning this conversation is as follows:

---

[4] MTO also submitted a copy of its Registration No. 1,155,884. This registration, which is the subject of the cancellation proceeding, is of record by operation of the rules.

6

Q.  And why did you telephone Miss Kern?

A.  Once I found out that she was awarded the mark Maid-to-Order, I called her personally and asked if she was using it outside of Illinois. Her statement to me was she was only located in the city of Chicago.  She was only cleaning in the city of Chicago.  I told her what I had in mind.  She said she had no plans whatsoever to take the mark outside of Illinois or the city of Chicago.  I then at that time told her that I felt that she was illegally awarded, fraudulently awarded the name Maid to Order because she wasn't using it in interstate commerce.

Q. Why did you feel the need to call Miss Kern about the Maid to Order mark?

A.  Well, at that time or a couple of months before we made a decision to franchise our system due to its success.  And we had – I put my life savings in it to get it going and I was ready to go and I wanted to franchise the system.  And she more or less stated she wasn't going to use it in interstate commerce.

Q.  During the conversation of October 1992, what did you tell Ms. Kern, about your use of your Maids to Order mark?

A.  I just told her our plans, that we had just sold our first franchise, and we are now planning on selling franchises from coast to coast.

Q.  And during the conversation of October 1992, what was Ms. Kern's response to the fact that you were using your Maids to Order mark to franchise?

A.  She stated that she really didn't care. Again, she wasn't going to use it in interstate commerce as long as I stayed out of Chicago. (Dep. at 6-7).

According to Mr. Jefferys, it was his belief from the conversation with Ms. Kerns that MTO was not using and had not used the mark MAID TO ORDER in interstate commerce.  He thereafter went ahead with his plans to sell MAIDS TO ORDER

franchises. (Dep. at 8-9.) Mr. Jefferys testified that in 1999, after MTO-Ohio had grown significantly, counsel for MTO-Ohio spoke with Ms. Kern. Again, according to Mr. Jefferys, Ms. Kern advised MTO-Ohio's counsel that she did not have plans to use the mark outside the Chicago metropolitan area. (Dep. at 10).

With respect to filing the application which matured into MTO-Ohio's registration, Mr. Jefferys testified that:

Q. Did you satisfy yourself that from what you had read on-line with regard to federal trademark law that you were free to use the mark? Go ahead.

A. If, in fact, that was the law that I read that the federal government put on their website, yes, I understood it.

Q. What do you remember of the law that you read?

A. About interstate commerce.

Q. And how do you define interstate commerce?

A. Using the trademark outside of the state.
          …..

Q. Explain to me your understanding of the word "use" first of all.

A. If I recall, without having the website drawn up in front of me from the United States government, "use" means using it in commerce which, especially in franchising which I was about to do in commerce, means state to state, shore to shore throughout the United States. That was my understanding. (Dep. at 28-30).

Further, Mr. Jefferys testified that he had no firsthand knowledge of MTO's use of the MAID TO ORDER mark prior to this cancellation proceeding. (Dep. at 16).

MTO

MTO offered the testimony deposition of its president and CEO, Coralee Kern.  In addition, MTO relied on the discovery deposition and summary judgment declaration of Ms. Kern.  MTO has offered "cleaning and party staffing service[s]" under the mark MAID TO ORDER since 1971.  (Test. Dep. at 11 and 14).  MTO provides cleaning services for homes and corporate apartments in the Chicago metropolitan area.  MTO employees have cleaned corporate apartments in the Chicago metro area which are owned or leased by companies with headquarters located outside the state of Illinois.  For example, since 1971 MTO employees have cleaned the Chicago area corporate apartments of Swiss Colony Corporation which is headquarted in Wisconsin (Test. Dep. at 79-80).  Included among MTO's other out-of-state clients are the American Broadcasting Corporation, IBM, Broyhill Industries, Standard Oil Company, and Bear Stearns. (Test. Dep. at 16-19).  In 1981 and 1982 MTO employees provided cleaning services for the Clairol Corporation of

New York at its booth at the annual "Housewares" show in Chicago. (Test. Dep. at 77).

On December 10, 1974 and July 4, 1976, MTO employees provided cleaning services at homes located in Wisconsin. (Disc. Dep. at 29). In addition, on one occasion, MTO employees accompanied a client from Chicago to San Diego to assist the client in settling in at that location (Test. Dep. at 127), and on another occasion an MTO employee accompanied a client to Colorado to provide cleaning services at a residence. (Test. Dep. at 127-128).

Ms. Kern has been interviewed by newspapers and magazines, and has appeared on radio and television shows to discuss MTO's cleaning services. (Test Dep. at 29). She and her company were featured in the February 20, 1979 issue of Family Circle magazine (Test. Dep. at 32), the June 7, 1978 issue of the Chicago Tribune (Test. Dep. at 33), and in the late 1970s Ms. Kern appeared on the Phil Donahue Show. (Test. Dep. at 47). Insofar as advertising is concerned, MTO has distributed letters and postcards with information about its cleaning services to building managers of office buildings in the Chicago metro area and to corporations at their headquarters in New York and Philadelphia. (Test. Dep. at 50-51 and 69-73). MTO also has sent business cards to corporations that are headquartered outside Illinois. (Test. Dep. at 118). MTO has advertised in the Evanston

Review, Chicago magazine, Landlord Journal, and Real Estate Guide. (Test. Dep. at 56-57). In November 1980, MTO advertised in the Chicago International Film Festival Program book (Test. Dep. at 58). According to Ms. Kern, persons from around the world attend this festival. (Test. Dep. at 60). In addition, MTO employees leave the company's business cards in the corporate apartments they clean. (Test. Dep. at 119). Insofar as MTO's corporate clients that are headquartered outside Illinois are concerned, MTO sends invoices to their corporate headquarters. (Test. Dep. at 102). During her discovery deposition, Ms. Kern introduced two documents, one of which she characterized as "a list of our clients that we service that we believed were in interstate commerce," and the second she characterized as a list of companies from whom MTO had received checks and she stated that "I believe that these checks showed that we did interstate commerce business." (Disc. Dep. at 130-134 and exhibit 7). The documents list companies with addresses outside the state of Illinois.

Ms. Kern testified that during her conversation with Mr. Jefferys, she never stated that MTO had not used the MAID TO ORDER mark in interstate commerce.

The Issues

The following issues are before us for consideration:

11

1.  MTO-Ohio's claim that MTO obtained and maintained its registration fraudulently;

2.  MTO's affirmative defense of unclean hands to MTO-Ohio's claim of fraud;

3.  MTO's claim that MTO-Ohio obtained its registration fraudulently; and

4.  MTO's claim of likelihood of confusion.

We begin our discussion with the second issue.

MTO's affirmative defense to MTO-Ohio's Claim of Fraud

As previously noted, in its answer to MTO-Ohio's fraud claim, MTO pleaded as an affirmative defense that MTO-Ohio adopted its mark with knowledge of MTO's mark and, therefore, that MTO-Ohio is guilty of unclean hands. In their briefs on the case, the parties did not discuss unclean hands, but rather the affirmative defense of laches. Thus, it appears that the issue of laches was tried by the implied consent of the parties. Fed. R. Civ. P. 15(b) provides, in pertinent part, that when issues not raised in the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. However, in this case, it would be futile to treat the issue of laches as though it were asserted as an affirmative defense in MTO's answer because laches is unavailable against a claim of fraud. Bausch & Lomb, Inc. v. Leupold & Stevens Inc., 1

12

USPQ2d 1497, 1499 (TTAB 1986). The reason this equitable defense is not available is that "it is within the public interest to have registrations which are void ab initio stricken from the register and that this interest or concern cannot be waived by the inaction of any single person or concern no matter how long the delay persists." W. D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co., 146 USPQ 313, 316 (TTAB 1965), aff'd 377 F.2d 1001, 153 USPQ 749 (CCPA 1967). Thus, MTO may not raise the affirmative defense of laches and we have given no consideration to the parties' arguments with respect to this defense in their briefs. Moreover, since MTO did not pursue the affirmative defense of unclean hands and, in any event, this defense is also unavailable against a claim of fraud (see W.D. Byron & Sons, supra), we have given it no consideration.

MTO-Ohio's Fraud Claim

MTO-Ohio's fraud claim is based on its allegation that MTO made material false misrepresentations by its statements that it had used/was using the mark MAID TO ORDER in connection with cleaning services in interstate commerce in the application which issued as Registration No. 1,155,884,

13

in its Section 8 declaration, and in its application for renewal.[5] Specifically, MTO-Ohio maintains that, as shown by the record, MTO has not rendered the services identified in its registration, i.e., cleaning of domestic and business premises, in more than one state on a significant basis.

MTO counters by contending that "at all relevant times, MTO's [president] always believed that MTO was using the MAID TO ORDER mark in interstate commerce;" that "continuously since 1971, MTO has used the MAID TO ORDER mark in interstate commerce;" and that this "has been borne out by MTO's evidence of continuous advertising to, and business relationships with, customers and prospective customers both in Illinois and outside Illinois." (Brief, p. 11).

Fraud in obtaining or maintaining a trademark registration "occurs when an applicant [or later,

---

[5] MTO made the following statements:

> "The mark [MAID TO ORDER] … was first used in commerce among the several states which may lawfully be regulated by Congress on December 10, 1974… and is now in use in such commerce." Application filed August 6, 1978.

> "The mark [MAID TO ORDER] has been in continuous use in interstate commerce, or such other commerce as may be lawfully regulated by Congress for five consecutive years from May 26, 1981 to the present." Section 8 declaration filed July 2, 1986.

> "[MTO] is using the mark [MAID TO ORDER] in commerce in connection with … cleaning of domestic and business premises… ." Application for renewal filed April 5, 2001.

14

registrant] knowingly makes false, material misrepresentations of fact in connection with his application," or in connection with a Section 8 declaration or in connection with an application for renewal. Torres v. Cantine Torresella S.R.L., 808 F.2d 46, 1 USPQ2d 1483, 1484 (Fed. Cir. 1986); 5 J. McCarthy, Trademarks and Unfair Competition, Section 20:58 (4th ed. updated March 2006) ("It is relatively clear that fraud made in affidavits under §§8 and 9, to continue a registration, also constitutes fraud in 'obtaining' a registration sufficient for cancellation.") To constitute fraud on the USPTO, the statement must be (1) false, (2) a material representation and (3) made knowingly. Torres v. Cantine Torresella S.R.L., supra, 1 USPQ2d at 1484. Furthermore, as this Board has stated:

> Fraud implies some intentional deceitful practice or act designed to obtain something to which the person practicing such deceit would not otherwise be entitled. Specifically, it involves a willful withholding from the Patent and Trademark Office by an applicant or registrant of material information or fact, which, if disclosed to the Office, would have resulted in the disallowance of the registration sought or to be maintained. Intent to deceive must be "willful". If it can be shown that the statement was a "false misrepresentation" occasioned by an "honest" misunderstanding, inadvertence, negligent omission or the like rather than one made with a willful intent to deceive, fraud will not be found. Fraud, moreover, will not lie if it can be proven that the statement, though false, was made with a reasonable and honest belief that it was true or that the false statement is not material to the issuance or maintenance of the registration. It thus appears that the very nature of the charge of fraud requires that it be proven "to the hilt"

15

> with clear and convincing evidence. There is no
> room for speculation, inference or surmise and,
> obviously, any doubt must be resolved against the
> charging party.

First International Services Corp. v. Chuckles Inc., 5

USPQ2d 1628, 1634 (TTAB 1988), citing Smith International,

Inc. v. Olin Corp., 209 USPQ 1033, 1043-44 (TTAB 1981).

The parties do not dispute that MTO's representations

to the USPTO that the mark MAID TO ORDER had been used/was

in use in interstate commerce are "material" in that, but

for the representations, the registration would not have

been issued or maintained. In this regard, Section 3 of the

Trademark Act requires that a service mark be used in

commerce before it may be registered. In addition, Sections

8 and 9 of the Act require that a service mark be in use in

commerce in order to maintain the registration. A mark

shall be deemed to be in use in commerce "on services when

it is used or displayed in the sale or advertising of

services and the services are rendered in commerce, or the

services are rendered in more than one State or in the

United States and a foreign country and the person rendering

the services is engaged in commerce in connection with the

services." 15 U.S.C. §1127.

The parties, in their briefs, primarily focus their

arguments on whether MTO's evidence establishes that it was

rendering its cleaning services in interstate commerce when

MTO filed its application, its Section 8 declaration, and

its application for renewal. However, as noted previously, fraud occurs when an applicant or later, registrant knowingly makes false, material misrepresentations of fact to the USPTO. Thus, in determining whether MTO procured and maintained its registration fraudulently, we need not reach the question of whether the activities relied on by MTO are sufficient to establish that it rendered cleaning services in interstate commerce. See Pennwalt Corporation v. Sentry Chemical Company, 219 USPQ 542, 550 (TTAB 1983). ["In determining the fraud issue we need not consider whether the interstate shipment to Good Housekeeping was or was not sufficient for use in commerce within the meaning of the Trademark Act to support a claim of first use for purposes of registration, and we do not decide that issue. We need only determine whether Pennwalt's reliance on this sale in its application for registration constituted an intentional misrepresentation or withholding of a fact material to the examination of the application for registration."].

In other words, we need only decide whether MTO's president, Ms. Kern, at the time of filing the application, the Section 8 declaration, and the application for renewal, knowingly made a false representation with respect to use of the mark in interstate commerce. If she had a reasonable or

17

legitimate basis for the representations, then MTO has not committed fraud.[6]

Analysis

Viewing the evidence in light of the above legal principles, we find that MTO-Ohio has not established that MTO procured and/or maintained its registration fraudulently.

Ms. Kern testified that in connection with filing MTO's application, she provided counsel with two dates as evidence of use of the mark MAID TO ORDER in interstate commerce. She stated that MTO sent employees to work in homes in Kenosha, Wisconsin on December 10, 1974 and in New Berlin, Wisconsin on July 4, 1976. (Disc. Dep. at 29). As to the July 4, 1976 date, in particular, Ms. Kern testified:

    Q.  Why did you choose that date to give to
    Mr. Kinser:

    A.  Well, we don't choose dates.  I mean, it
    states that somebody asks us, Maid-to-Order, to do
    work.

    Q.  I'm speaking of the date you gave to Mr.
    Kinser in your letter of August 8, 1978.  You list
    a date of July 4, 1976, with the City of New
    Berlin, Wisconsin.  Why did you choose that date
    to give to Mr. Kinser?

    A.  I think he might have asked me where I had
    done business out of Illinois.

---

[6] We should point out that, where as here, MTO's registration is incontestable, MTO-Ohio may not challenge the registration on the ground that the mark was not used in commerce.

18

Q. So Mr. Kinser explained to you the need for the use of the trademark or service mark Maid-to-Order out of the State of Illinois, correct?

A. Yes.

Q. So you were aware of that when you filed the trademark application that you needed to have use out of the state of Illinois, correct?

A. Yes.
(Disc. Dep. at 34-35).

Ms. Kern, however, was unable to remember the exact number of times MTO had sent employees to clean premises outside the state of Illinois. In this regard, she testified as follows:

Q. Let's concentrate, Ms. Kern, I know this may be difficult. It's been quite sometime back around August or the summer of 1987, up to 1978. How many premises had Maid-to-Order cleaned outside the State of Illinois?

A. I don't know that.
(Disc. Dep. at 84).

As to Ms. Kern's understanding of interstate commerce, she stated during her testimony deposition:

Q. Does the term interstate commerce have any specific meaning to ... any special meaning to you?

A. In particular, it means that I believe that you do work that involves going over state lines.
(Test. Dep. at 137).

Further, as outlined above, Ms. Kern testified that MTO employees have cleaned corporate apartments which are owned or leased by companies with headquarters located outside Illinois; that she sends the invoices for these

19

cleaning services to the companies' out-of-state addresses; that MTO has sent postcards to companies that are headquartered in Philadelphia and New York; and that MTO has sent business cards to companies with out-of-state addresses.

Also significant is that Ms. Kern introduced, during her discovery deposition, a document which she characterized as "a list of our clients that we service that we believed were in interstate commerce." (Disc. Dep. at 130). The list includes the names of the companies, their addresses (which are outside the state of Illinois), and the years (1971-2000) during which MTO provided cleaning services at their corporate apartments. Also, Ms. Kern introduced a list of clients with out-of-state addresses from whom MTO received checks, and she stated "I believe that these checks showed that we did interstate commerce business." (Disc. Dep. at 134). Ms. Kern testified that these two lists were merely representative and were not intended to be the complete list of MTO's corporate clients with out-of-state addresses.

Based on this evidence, we find that Ms. Kern had a reasonable basis for her belief that MTO had used/was using the mark MAID TO ORDER in interstate commerce for cleaning services at the time of filing the application, the Section 8 declaration, and the application for renewal. It was not

20

unreasonable for Ms. Kern, as a layperson, to believe that the above activities constituted use of the MAID TO ORDER mark in interstate commerce. The record shows that prior to the filing date of the application, MTO had sent employees out of state to clean residences on at least two occasions and that it had provided cleaning services in the Chicago metro area for at least five corporate clients that were headquartered outside Illinois. Further, when MTO filed its Section 8 declaration, it had at least five out-of-state corporate clients, and when it filed its application for renewal it had at least two such clients.[7] In addition, the record shows that prior to the filing of the application, MTO had received at least ten checks from out-of-state corporate clients; fifteen checks during the period between the filing of the application and the filing of the Section 8 declaration; and fifteen checks during the period between the filing of the Section 8 declaration and the renewal application.

While these activities are not, in any way, conclusive on the question of whether MTO has in fact used the mark MAID TO ORDER in interstate commerce, they do serve to establish that Ms. Kern had a good faith belief that MTO had used/was using the mark MAID TO ORDER in interstate commerce

---

[7] We note that the time frames for some of these clients cover more than one period, e.g., prior to the filing date of the application and at the time the Section 8 declaration was filed.

21

at the time of filing the application, the Section 8 declaration, and the application for renewal. This belief is sufficient to negate an inference of fraud upon the USPTO in obtaining and maintaining the registration. Cf. Global Machine GmbH v. Global Banking Systems, Inc., 227 USPQ 862 (TTAB 1985) [U.S. distributor of foreign-made goods who falsely represented to USPTO examiner that foreign manufacturer was not the owner of the mark was found guilty of fraud].

Further, while we need not and do not decide whether such activities constitute use of the mark MAID TO ORDER in interstate commerce, we nonetheless note that our primary reviewing court and its predecessor have held that the "use in commerce" requirement of Section 3 of the Act does not require as a prerequisite to registration that an applicant's services be rendered in more than one state. See Larry Harmon Pictures Corp. v. The Williams Restaurant Corp., 929 F.2d 662, 18 USPQ2d 1292 (Fed. Cir. 1991)[applicant that operated a single restaurant in Tennessee under the mark BOZO'S was found to have used the mark in commerce where record showed that customers from out of state had patronized the restaurant]; and In re Gastown, Inc., 326 F.2d 780, 140 USPQ 216 (CCPA 1964)[applicant that operated a chain of automobile and truck service stations in Ohio under the mark GASTOWN was found to have used the mark

22

in commerce where record showed that some of applicant's stations were located on federal highways and were patronized by customers from other states].

In sum, we find that MTO-Ohio has not met its "heavy burden of proof" in showing fraud. W.D. Byron & Sons, Inc., supra. MTO-Ohio's petition to cancel MTO's registration is therefore denied.

MTO's Fraud Counterclaim

We turn next to MTO's counterclaim to cancel MTO-Ohio's registration on the ground of fraud. The basis of MTO's counterclaim of fraud is that at the time MTO-Ohio filed its application, MTO-Ohio's president, Mr. Jefferys, knew of MTO's use and registration of the mark MAID TO ORDER for cleaning services and yet MTO-Ohio, in its application, knowingly misrepresented to the USPTO that to the best of its "knowledge and belief no other person, firm, corporation, or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the [services] of such other person, to cause confusion, to cause mistake or to deceive … ." MTO maintains that not only did MTO-Ohio's president, Joseph Jefferys, know of MTO's use and registration of the mark MAID TO ORDER for cleaning services, but MTO-Ohio subsequently offered to

23

purchase MTO's rights in the mark; and yet MTO-Ohio failed to disclose MTO's prior rights to the USPTO.

MTO-Ohio maintains that it has not committed fraud because MTO has not used the mark MAID TO ORDER in interstate commerce, and thus MTO does not have rights prior or superior to those of MTO-Ohio.

First, we note that this Board has held that the failure of a party filing an application to disclose the existence of a prior registration to the USPTO is not fraud. William Grant & Sons, Inc. v. National Distillers and Chemical Corporation, 173 USPQ 813 (TTAB 1972)[counterclaim did not state a cause of action since, even if opposer's predecessor (at the time of filing application for registration) knew or should have known of prior registration of same mark as instant applicant now seeks to register, predecessor did not act fraudulently since such prior registration was known or should have been known to the examiner and, hence, predecessor's statement that no other party had right to use mark was not intended to mislead examiner].

Further, citing Kemin Industries, Inc. v. Watkins Products, Inc., 192 USPQ 327 (TTAB 1976), Professor McCarthy has pointed out that "[t]he oath is phrased in terms of a subjective *belief*, such that it is difficult, if not impossible, to prove objective falsity and fraud so long as

the affiant or declarant has an honestly held, good faith belief." 5 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> (4th ed. updated March 2006) at Section 31.76 (emphasis in original). In determining whether an applicant, when he signed his application oath, held an honest, good faith belief that he was entitled to registration of his mark, the Board has stated that "if the other person's rights in the mark, vis-à-vis the applicant's rights are not known by applicant to be superior or clearly established, e.g., by court decree or prior agreement of the parties, then the applicant has a reasonable basis for believing that no one else has the right to use the mark in commerce, and that applicant's averment of that reasonable belief in its application declaration or oath is not fraudulent." Intellimedia Sports Inc. v. Intellimedia Corp., 43 USPQ2d 1203 (TTAB 1997).

As noted above, Mr. Jefferys' defense to the claim of fraud is based on his view that MTO was not using the MAID TO ORDER mark in connection with cleaning services in interstate commerce. However, Mr. Jefferys' interpretation of the law in this respect is incorrect. Even if a party is using a mark in a limited geographical area, such use must be disclosed if the applicant knows that that party has rights. The question then is what exactly did Mr. Jefferys know concerning MTO's rights in the MAID TO ORDER mark.

25

There is, at the very least, a dispute as to whether Mr. Jefferys knew that MTO was using the mark MAID TO ORDER in interstate commerce at the time MTO-Ohio filed its application. Mr. Jefferys testified that when he spoke with Ms. Kern prior to filing MTO-Ohio's application, she indicated that MTO was not using the MAID TO ORDER mark outside the city of Chicago. Of course, Ms. Kern testified that she did not tell Mr. Jefferys that MTO was not using the mark in interstate commerce.

However, beyond this, we have no testimony concerning what, if any, further information concerning MTO's use of the MAID TO ORDER mark was disclosed by Ms. Kern to Mr. Jeffreys. In particular, we have no testimony concerning whether Ms. Kern indicated to Mr. Jeffreys when MTO began using the MAID TO ORDER mark. Rather, Mr. Jefferys testified that he had no firsthand knowledge of MTO's use of the mark MAID TO ORDER prior to this proceeding. Mr. Jefferys testified as follows:

> Q. Prior to this cancellation proceeding, did you have any firsthand knowledge of any use of Miss Kern's Maid-to-Order mark?
>
> A. No.
>
> Q. If Miss Kern was using the Maid-to-Order mark in interstate commerce, would that have had any effect upon your use of your Maids to Order mark and you franchising under that name?
>
> A. Absolutely.
>
> Q. What effect would it have had?

26

A.  We wouldn't have used the mark.

Q.  Why not?

A.  We had two federal trademarks, the Personal Touch People and Maids to Order.  If she was going to use or used it in interstate commerce, we would have been known as of today as the Personal Touch People.
(Dep. at 16).

Thus, we cannot say that, from the information Mr. Jeffreys received during his telephone conversation with Ms. Kern, he had clear knowledge that MTO had the right to use the MAID TO ORDER mark, e.g., that MTO had superior rights to those of MTO-Ohio.  In this regard, we note that a trademark applicant has no duty to investigate potential conflicting uses that might be found through a trademark search, and therefore there is no duty to investigate specific information such as when a third party may have started using a mark.  See e.g. Money Store v. Harriscorp Finance, Inc., 689 F.2d 666, 216 USPQ 11 (7th Cir. 1982) [an applicant has no duty to investigate and report to the USPTO all other possible users of the same or similar mark].

In sum, we cannot say that Mr. Jefferys knew or should have known that MTO had prior rights in the MAID TO ORDER mark which MTO-Ohio should have disclosed.  Indeed, it appears from the above testimony that had Mr. Jeffreys understood that MTO had prior rights in the MAID TO ORDER mark based on use of the mark in a limited geographical area, MTO-Ohio would not have filed its application.

27

Rather, it would have gone forward with the mark "Personal Touch People." In other words, it appears that MTO-Ohio went forward with its application because Mr. Jefferys did not believe that MTO had prior rights in the MAID TO ORDER mark. We should add that the fact that MTO-Ohio, subsequent to filing its application, offered to purchase whatever rights MTO had in the MAID TO ORDER mark is not evidence that MTO-Ohio knew that MTO had prior or superior rights. In view of the foregoing, we find that MTO has not established that MTO-Ohio committed fraud in signing the declaration in its application.

MTO's Likelihood of Confusion Counterclaim

We turn next to MTO's counterclaim of likelihood of confusion.[8] Our determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. duPont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Company, Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d

---

[8] In view of our denial of MTO-Ohio's petition to cancel MTO's registration, we have accorded the registration full effect in rendering our decision on the issue of likelihood of confusion.

28

1098, 192 USPQ 24 (CCPA 1976). See also, In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

Priority

The record shows that MTO first used its mark MAID TO ORDER in connection with its services, i.e., cleaning of domestic and business premises, in 1971. This date is earlier than the date of first use of 1987 established by MTO-Ohio in connection with its cleaning services and franchising services. Priority may be based on intrastate use of a mark. Corporate Document Services, Inc. v. I.C.E.D. Management, Inc., 48 USPQ2d 1477 (TTAB 1998). Thus, priority lies with MTO.

The Marks

Considering first MTO-Ohio's mark MAID TO ORDER and MTO's mark MAIDS TO ORDER, it is obvious that they are virtually identical in terms of appearance and sound, differing by only one letter. Further, the marks have very similar connotations. Both marks are a "play" on the expression "made-to-order" and connote a maid(s) which meets the customer's specific needs.[9] Consequently, when considered in their entireties, the marks MAIDS TO ORDER and

---

[9] In this regard, we judicially notice that the phrase "**made to order**" is defined in Webster's II New Riverside University Dictionary (1984) as: *1. Made according to particular requirements or instructions: Custom-made. 2. Highly suitable*.

MAID TO ORDER project essentially the same commercial impression.

The Services

We turn next to the respective services. The class 37 "maid services" set forth in MTO-Ohio's registration are highly similar, if not identical, to the services set forth in MTO's registration, namely, "the cleaning of domestic and business premises." Moreover, because the class 35 franchising services set forth in MTO-Ohio's registration involve the franchising of maid services, such franchising services are also similar to the services of cleaning of domestic and business premises set forth in MTO's registration. Indeed, with respect to the relatedness of the parties' services, we note MTO-Ohio's allegation No. 6 in the petition to cancel that MTO's services are "closely related and in some instances, identical to those of [MTO-Ohio]." Also, in view of the identical and related nature of MTO-Ohio and MTO's services, we must presume that such services would travel in the same channels of trade and be offered to the same classes of consumers.

In view of the substantial similarity of the marks and identity/relatedness of the services, we find that contemporaneous use of the involved marks is likely to cause confusion. Persons familiar with MTO's cleaning services for residential and business premises offered under the mark

MAID TO ORDER, upon encountering MTO-Ohio's cleaning services and franchising services offered under the mark MAIDS TO ORDER would be likely to believe that the services originated with or are somehow associated with or sponsored by the same source.

Decision:    The petition to cancel Registration No. 1,155,884 on the ground of fraud is denied.  The counterclaim to cancel Registration No. 2,466,602 on the ground of likelihood of confusion is granted and the registration will be cancelled in due course.